UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**CONMED CORPORATION,**

                           **Plaintiff,**

   vs.                                                      6:21-CV-0083
                                                                   (MAD/ML)

**FEDERAL INSURANCE COMPANY,**

                           **Defendant.**

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **CONMED CORPORATION**<br>525 French Road<br>Utica, New York 13502<br>Attorneys for Plaintiff | **DANIEL S. JONES, ESQ.** |
| **CONMED CORPORATION**<br>161 Long Ridge Road<br>Stamford, Connecticut 06903<br>Attorneys for Plaintiff | **ERICA LYNN VISOKEY, ESQ.** |
| **HANCOCK ESTABROOK, LLP**<br>1800 AXA Tower I<br>100 Madison Street<br>Syracuse, New York 13202<br>Attorneys for Plaintiff | **JOHN G. POWERS, ESQ.**<br>**MARY L. D'AGOSTINO, ESQ.** |
| **COHEN ZIFFER FRENCHHMAN &**<br>**McKENNA LLP**<br>1350 Avenues of the Americas – 25th Floor<br>New York, New York 10019<br>Attorneys for the Plaintiff | **MERIDITH ELKINS, ESQ.**<br>**ROBIN L. COHEN, ESQ.** |
| **RIKER DANZIG SCHERE HYLAND &**<br>**PERETTI LLP – NJ OFFICE**<br>Headquarters Plaza<br>One Speedwell Avenue<br>P.O. Box 1981<br>Morristown, New Jersey 07962<br>Attorneys for Defendant | **CARA C. VECCHIONE, ESQ.** |

| | |
|---|---|
| **CLYDE & CO LLP** <br> The Chrysler Building <br> 405 Lexington Avenue <br> New York, New York 10174 <br> Attorneys for Defendant | **DAVID CHARLES SIENKO, ESQ.** |
| **ROBINSON & COLE LLP** <br> Chrysler East Building <br> 666 Third Avenue, 20th Floor <br> New York, New York 10017 <br> Attorneys for Defendant | **LAWRENCE KLEIN, ESQ.** <br> **MATTHEW P. MAZZOLA, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff, CONMED Corporation, initiated this lawsuit against Defendant, Federal Insurance Company, on January 25, 2021. *See* Dkt. No. 1. In its amended complaint, Plaintiff alleges that Defendant breached the terms of their insurance contract when Defendant failed to defend Plaintiff's indemnitee, Sterigenics, in a lawsuit in Georgia. *See* Dkt. No. 24 at ¶ 9. On June 10, 2021, each party filed a motion for judgment on the pleadings. *See* Dkt. Nos. 37, 38. For the following reasons, Plaintiff's motion is granted and Defendant's motion is denied.

### II. BACKGROUND

Plaintiff, a medical technology company, operates a distribution warehouse facility in Lithia Springs, Georgia. *See* Dkt. No. 24 at ¶ 3. Beginning in 2010, Plaintiff contracted with Sterigenics U.S., LLC to sterilize its medical devices with a technique using Ethylene Oxide ("EtO").[1] *See id.* at ¶ 35; Dkt. No. 24-4. On May 19, 2020, 53 individuals filed a lawsuit against Plaintiff and Sterigenics in Georgia state court. *Id.* at ¶ 28; *Essence Alexander, et al. v. Sterigenics U.S., LLC*, et al., C.A. No. 20-A-1645 (State Court of Cobb County) ("Alexander

---

[1] EtO is a sterilant for medical equipment and supplies. Dkt. No. 24 at ¶ 31.

2

Action"). The plaintiffs in the Alexander Action are current and former employees of Plaintiff at the Lithia Springs distribution facility and allege that they were exposed to unsafe levels of EtO. *See* Dkt. No. 24-6 at ¶ 91. Plaintiff is defending Sterigenics in the Alexander Action, citing an obligation to do so under an indemnification agreement between Plaintiff and Sterigenics. Dkt. No. 24 at ¶ 38.

Since 2009, Plaintiff has purchased insurance policies from Defendant, which include coverage for defense costs, indemnification obligations, and other losses resulting from bodily injury. *See* Dkt. No. 24-1 at 21. On May 26, 2020, Plaintiff gave Defendant notice of the Alexander Action, including Plaintiff's indemnification of Sterigenics. Dkt. No. 24 at ¶ 39. On November 16, 2020, Defendant denied coverage of the defense costs for Sterigenics in the Alexander Action. *Id.* at ¶ 44. Plaintiff initiated this suit on January 25, 2021, alleging that Defendant's denial was a breach of their contract. *See generally* Dkt. No. 1.

**A.     The Insurance Policy**

The insurance policy between Plaintiff and Defendant requires Defendant to "defend [Plaintiff] against a suit, even if such suit is false, fraudulent or groundless." Dkt. No. 24-1 at 21. The duty to defend extends to "the indemnitee of the insured, provided the obligation to defend, or the cost of the defense of, such indemnitee has been assumed by [Plaintiff] in an insured contract." *Id.* The policy defines "insured contract" to include "any other contract or agreement pertaining to your business … in which you assume the tort liability of another person or organization to pay damages, to which this insurance applies, sustained by a third person

3

organization." *Id.* at 43. As relevant to the Alexander Action, the insurance agreement between Plaintiff and Defendant applies to "bodily injuries"[2] assumed in an "insured contract." *Id.* at 20.

The policy includes several exclusions. Relevant here, the policy excludes "bodily injury" to Plaintiff's employees arising out of the course of their employment, but the exclusion does not apply to liability for damages assumed by Plaintiff in an "insured contract." *Id.* at 28-29. Additionally, the policy excludes "bodily injury" arising out of "the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." *Id.* at 35.

**B.     Plaintiff and Sterigenics' Indemnification Agreement**

Plaintiff and Sterigenics entered into two relevant agreements, the first was effective from December 17, 2010, to December 31, 2016, and the second from March 28, 2017, to December 31, 2021. *See* Dkt. Nos. 24-3, 24-4. The agreements include similar indemnification provisions, which exclude from indemnification the damages that arise out of Sterigenics's negligence. Relevant here, the indemnification provision in the 2010 agreement between Plaintiff and Sterigenics excludes damages that "arise out of Sterigenics' negligent acts or omissions." Dkt. No. 24-4 at 6. The 2017 agreement, however, only excludes damages that "arise exclusively and directly out of Sterigenics' negligent acts or omissions." Dkt. No. 24-3 at 7.

Additionally, the 2017 agreement includes a reciprocal indemnification obligation, which states:

> Sterigenics agrees to indemnify, defend and hold Customer harmless from and against all Damages incurred or suffered by Customer arising out of or in connection with third party claims that arise out of or in connection with Sterigenics negligent acts or omissions, except to the extent such Damages arise out of the negligent acts or omissions of Customer.

---

[2] The policy defines "bodily injury" as "physical injury; sickness; or disease sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time." Dkt. No. 24-1 at 42.

4

*Id.*

C.     **The Alexander Action**

The Alexander Action is brought by 53 individuals who are current and former employees of Plaintiff, as well as contractors and other temporary workers, at Plaintiff's Lithia Springs distribution facility from 2007 to 2019. *See* Dkt. No. 24-6 at ¶ 91. The original complaint was filed on May 19, 2020, an amended complaint on October 28, 2020, and a second amended complaint on February 4, 2021. *See* Dkt. Nos. 38-2, 38-3, 38-4. In general, the complaint alleges that Sterigenics failed to remove EtO residue from equipment, failed to monitor the safety of items before shipping them to Plaintiff, and shipped hazardous materials in unmarked and non-equipped trucks, among other things. *See* Dkt. No. 24-6 at ¶¶ 105-40. Against Plaintiff, the Alexander Action generally alleges that Plaintiff exposed individuals to unsafe and persistent levels of EtO. *Id.*

Specifically, the second amended complaint alleges the following causes of actions against Sterigenics (1) negligence; (2) strict liability; (3) aiding and abetting tortious conduct; (4) fraud; (5) fraudulent concealment and/or negligent/intentional misrepresentation; (6) civil battery; (7) intentional infliction of emotional distress; (8) civil conspiracy; and (9) wrongful death. *See id.* And against Plaintiff, the second amended complaint in the Alexander Action alleges (1) aiding and abetting tortious conduct; (2) fraud; (3) fraudulent concealment and/or negligent/intentional misrepresentation; (4) intentional infliction of emotional distress; (5) defamation of character; and (6) abuse of process. *See id.*

### III. DISCUSSION

A.     **Standard of Review**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c) is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988); *Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*, 537 F. Supp. 3d 533, 545 (S.D.N.Y. 2021). "Judgment pursuant to Rule 12(c) can be particularly appropriate in breach of contract cases involving legal interpretations of the obligations of the parties" because "initial interpretation of a contract is a question of law for a court." *VoiceAge Corp. v. RealNetworks, Inc.*, 926 F. Supp. 2d 524, 529 (S.D.N.Y. 2013).

A motion for judgment on the pleadings is governed by "the same standard" as a motion to dismiss under Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)). Therefore, on such a motion, the Court must accept as true all of the non-movant's well pleaded factual allegations, and draw all reasonable inferences in favor of the non-movant. *See, e.g., Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994); *VoiceAge Corp.*, 926 F. Supp. 2d at 529. "When a plaintiff moves for judgment on the pleadings, the question for determination is whether on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law." *Allstate Ins. Co.*, 537 F. Supp. 3d at 545 (internal quotation marks omitted). "In other words, if a defendant's answer admits, alleges, or fails to deny facts which, taken as true, would entitle a plaintiff to relief on one or more claims supported by the complaint, then the plaintiff's Rule 12(c) motion should be granted." *Id.*

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). The Court may also review any document incorporated by reference in one of the pleadings. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). Finally, the Court may consider a document not specifically incorporated by reference but on which the complaint relies and which is integral to it. *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021).

**B.   Insurance Contract Principles**

Under New York law,[3] "an insurer has an 'exceedingly broad' duty to defend the insured." *Cent. Mut. Ins. Co. v. Willig*, 29 F. Supp. 3d 112, 118 (N.D.N.Y. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)). But "when the uncontroverted facts prove that no duty to indemnify exists[,] the insurer must be relieved of its duty to defend." *Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 160 (2d Cir. 2003). However, "[a]s the Court of Appeals for the Second Circuit emphasized, the duty to defend 'perdures until it is determined with certainty that the policy does not provide coverage.'" *Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*, 295 F. Supp. 2d 335, 338 (S.D.N.Y. 2003) (quoting *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001)).

It is not "'material that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusionary provisions.'" *Assunta, Inc. v. Penn-Am. Ins. Co.*, No. 1:09-CV-350, 2010 WL 93459, *2 (N.D.N.Y. Jan. 7, 2010) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984)). "Rather, the duty of the insurer to

---

[3] The parties agree that the interpretation of the insurance policy is governed by New York law.

defend the insured rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased." *Id.* To determine whether the duty to defend exists, courts first look to "the allegations within the four corners of the underlying complaint." *Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co.*, No. 06-CV-1117, 2010 WL 1257943, *5 (N.D.N.Y. Mar. 25, 2010); *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 159 (1992) ("Although [the insured] denies the allegations of the [underlying] complaint, we must assume – for the purpose of determining coverage – that what is alleged actually happened").

Pursuant to New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995). "If the provisions are clear and unambiguous, courts are to enforce them as written." *Id.* (citing *Maurice Goldman & Sons, Inc. v. Hanover Ins. Co.*, 80 N.Y.2d 986 (1992)). But if the policy language is ambiguous, then "the ambiguity must be interpreted in favor of the insured." *Id.*

Here, Defendant argues that the Alexander Action falls into certain exclusions within the policy. To assert a policy exclusion, an insurer must show that the claims in the underlying complaint fall "'*solely* and *entirely* within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation.'" *Napoli, Kaiser & Bern, LLP*, 295 F. Supp. 2d at 338 (quoting *Seaboard Surety Co.*, 486 N.Y.S.2d 873) (emphasis in original).

## C. Whether Defendant is Required to Defend Plaintiff's Indemnitee

The parties dispute whether Defendant, the insurer, is obligated to defend Plaintiff's indemnitee, Sterigenics, in the Alexander Action pursuant to the insurance policy between Plaintiff and Defendant. As stated above, the insurance policy provides that Defendant shall defend the indemnitee of Plaintiff, if "such indemnitee has been assumed by [Plaintiff] in an

insured contract." Dkt. No. 24-1 at 21.  And the policy defines "insured contract" to include "any other contract or agreement pertaining to your business … in which you assume the tort liability of another person or organization to pay damages, to which this insurance applies, sustained by a third person organization." *Id.* at 43.

Defendant argues that Plaintiff did not assume the tort liability of Sterigenics in the Alexander Action through their agreement, and that therefore Plaintiff's indemnification of Sterigenics is not through an "insured contract."  Pursuant to the indemnification agreement, actions arising out of Sterigenics' negligence are excluded.  Dkt. No. 24-3 at 7.  Defendant argues that the Alexander Action arises out of Sterigenics' negligence, and therefore Plaintiff's indemnification of Sterigenics was voluntary.  Additionally, the agreement contains a reciprocal indemnification provision.  Sterigenics agreed to indemnify Plaintiff for damages "arising out of or in connection with Sterigenics negligent acts or omissions, except to the extent such Damages arise out of the negligent acts or omissions of Customer." *Id.*  Defendant argues that because Sterigenics was sued for negligence, and Plaintiff was not, the reciprocal indemnification provision relieves Plaintiff of its obligation to otherwise indemnify Sterigenics.

Defendant is mistaken.  Plaintiff's indemnification of Sterigenics was pursuant to an insured contract because Sterigenics was sued for intentional torts as well negligence in the Alexander Action, such as civil battery and intentional infliction of emotional distress.  "The duty of the insurer to defend the insured rests solely on whether the complaint alleges *any facts or grounds* which bring the action within the protection purchased." *Assunta, Inc.*, 2010 WL 93459, at *2 (emphasis added).  It is immaterial that the Alexander Action alleges causes of actions outside the scope of the indemnification agreement while also alleging causes of actions squarely within it. *See id.*  Indeed, based solely on the complaint in the Alexander Action, this Court

9

cannot conclude that the underlying lawsuit arises out of Sterigenics' negligence simply because negligence is alleged. Rather, the duty to defend "perdures until it is determined with certainty that the policy does not provide coverage." *Hugo Boss Fashions, Inc.*, 252 F.3d at 620. Because intentional torts against Sterigenics are alleged in the Alexander Action, it remains possible that Plaintiff will be required to indemnify Sterigenics, and as such Plaintiff properly tendered a defense of Sterigenics pursuant to an insured contract.

For a similar reason, the reciprocal indemnification provision does not change this analysis. Sterigenics has indemnified Plaintiff for damages arising out of or in connection to its own negligence. But intentional torts have been alleged against Sterigenics in addition to negligence. Thus, Plaintiff's duty to defend Sterigenics in the Alexander Action, and therefore Defendant's duty to defend Sterigenics, is not altered by the reciprocal indemnification agreement between Plaintiff and Sterigenics. Plaintiff has indemnified Sterigenics in the Alexander Action pursuant to an insured contract, and therefore the defense of Sterigenics is covered by the insurance policy between Plaintiff and Defendant.

Lastly, Defendant claims three exclusions preclude coverage. Two of them, the contracts exclusion and the employers' liability exclusion, expressly retain liability for damages assumed in an "insured contract." Because, as discussed above, the liability was assumed in an insured contract, these two exclusions do not apply. The pollution exclusion, however, excludes "bodily injury" arising out of "the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants," and does not retain liability if the damages are assumed in an "insured contract."

To assert a policy exclusion, an insurer must show that the claims in the underlying complaint fall "*solely* and *entirely* within the policy exclusions, and, further, that the allegations,

10

*in toto*, are subject to no other interpretation." *Napoli, Kaiser & Bern, LLP*, 295 F. Supp. 2d at 33 (emphasis in original). The New York Court of Appeals has held that a similar pollution exclusion only applies where the damages alleged "are truly environmental in nature" or "result from pollution to the environment." *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003). In *Bell Painting*, the court held that paint fumes were not pollutants because such a broad definition of pollutants "infinitely enlarge the scope of the term 'pollutants,' and seemingly contradict both a 'common speech' understanding of the relevant terms and the reasonable expectations of a businessperson." *Id.* at 387. Alternatively, the court held, that any injury was not caused by the "discharge, dispersal, seepage, migration, release or escape" of the fumes. *Id.* Rather, "it strains the plain meaning, and obvious intent, of the language to suggest that these fumes, as they went from the container to [the injured party's] lungs, had somehow been 'discharged, dispersed, released or escaped.'" *Id.* at 388.

The Court finds that the Alexander Action did not allege injuries that were "truly environmental in nature." *Id.* at 387. Rather, the injuries in the Alexander Action alleged against Sterigenics, similar to *Bell Painting*, are the result of fumes that traveled a short distance. Moreover, the Alexander Action alleges additional claims that are not directly related to the EtO fumes, such as intentional infliction of emotional distress. Therefore, the underlying complaint does not fall "*solely* and *entirely* within the policy exclusions." *Napoli, Kaiser & Bern, LLP*, 295 F. Supp. 2d at 33. Accordingly, the pollution exclusion does not bar Defendant's duty to defend Plaintiff's indemnitee, Sterigenics.

### IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 37) is **GRANTED**;[4] and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings (Dkt. No. 38) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 10, 2022
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[4] Plaintiff's motion is granted with respect to its breach of contract claim. Neither party sought the disposition of Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, and it accordingly remains unresolved by this Memorandum-Decision and Order. It is well settled, however, that "'New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled.'" *Matsumura v. Benihana Nat'l Corp.*, 465 Fed. Appx. 23, 29 (2d Cir. 2012) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 319 F.3d 73, 81 (2d Cir. 2002)). Here Plaintiff bases its breach of good faith and fair dealing claim on substantially the same operative facts as its breach of contract claim. Having found in Plaintiff's favor on its breach of contract claim, it appears that Plaintiff would not be entitled to any additional relief if also successful on its breach of the implied covenant of good faith and fair dealing claim. *See id.*; *see also* Dkt. No. 24 at ¶ 64 ("The issuance of declaratory relief by this Court will terminate the existing controversy between CONMED, on the one hand, and [Defendant] on the other hand"). As such, the parties shall advise the Court within one (1) week of the issuance of this Memorandum-Decision and Order whether judgment shall be issued in Plaintiff's favor and this case closed as a result of this Memorandum-Decision and Order.